# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL FASSETT, et al., | No. 4:15-CV-00941 |
| Plaintiffs. | (Judge Brann) |
| v. | |
| SEARS HOLDINGS CORPORATION, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

### JULY 20, 2018

There are five motions pending before the Court. The first, a Motion for Summary Judgment filed by Kenmore Craftsman Diehard Intellectual Property, LLC ("KCD"),[1] will be granted. The second, a Motion for Summary Judgment filed by Bemis Manufacturing Company,[2] will be denied. The third, a Motion for Summary Judgment filed by Briggs & Stratton Power Products Group, LLC,[3] will be granted in part and denied in part. The fourth, a Motion to Exclude certain

---

[1] ECF No. 135.

[2] ECF No. 137. This motion was joined in by Sears Holdings Corporation; Sears, Roebuck and Co., and Sears Authorized Hometown Stores LLC.

[3] ECF No. 139.

expert testimony,[4] will be denied. And the fifth, a motion to permit the filing of certain supplemental expert testing,[5] will be denied as moot.

## I.  BACKGROUND

On May 16, 2013, Plaintiff Daniel Fassett was moving his lawn when the Craftsman riding lawnmower he was using began to "spit and sputter."[6] He took the mower to his garage, lifted its seat to view the engine, and saw that the mower's gas tank had expanded far beyond its usual size.[7] Perhaps hoping to release the pressure, Mr. Fassett began to unscrew the gas cap.[8] As he was doing so, however, fuel from the tank began spraying out.[9] Although he tried to run away, the fuel quickly ignited and Mr. Fassett was grievously injured.[10]

On May 13, 2015, Mr. Fassett and his wife Leslie initiated the instant suit against Defendants. Their Complaint contains claims for negligence (Count I), strict products liability (Count II), breach of warranty (Count III), gross negligence, recklessness, and malice (Count IV), loss of consortium (Count V),

---

[4]  ECF No. 143. This motion was also joined in by Sears Holdings Corporation; Sears, Roebuck and Co., and Sears Authorized Hometown Stores LLC.

[5]  ECF No. 178.

[6]  Deposition of Daniel Fassett (ECF No. 141-1) at 63, 74.

[7]  *Id.* at 75.

[8]  *Id.* at 76.

[9]  *Id.*

[10]  *Id.* at 77-78.

and negligent infliction of emotional distress (Count VI).[11] On November 9, 2015, Briggs & Stratton filed a third-party complaint against Bemis Manufacturing Company—the manufacturer of the mower's gas cap—for indemnification and contribution.[12]

## II. DISCUSSION

### A. Briggs's Motion to Exclude the Testimony of the Fassetts' Experts

Briggs argues that the testimony of Thomas Berry—one of the Fassetts' experts—should be excluded under Federal Rule of Evidence 702.[13]

According to Mr. Berry's May 1, 2017 report, Mr. Fassett's injuries were caused by "the failure of the [mower's] fuel venting system."[14] Specifically, Mr. Berry opines that, as designed, the mower's fuel tank "receive[d] significant heating from the engine due to its positioning close to the hot engine components," which led to a dangerous increase in the temperature and pressure of the gasoline in the tank. Although the tank was equipped with a cap whose purpose was to vent any excess pressure, Mr. Berry believes that the cap on Mr. Fassett's mower did

---

[11] ECF No. 1.

[12] ECF No. 52.

[13] ECF No. 143, 144.

Briggs's motion also sought to exclude the expert testimony of Noah Ryder and Ruston Hunt. Because those experts' reports were not considered when ruling on any of the pending motions, Briggs's motion vis-à-vis those experts will be denied as moot. Defendants, however, are free to seek exclusion of these experts' testimony via a motion in limine before trial.

[14] May 1, 2017 Expert Report of Thomas Berry (ECF No. 141-15) at 3.

not operate "as intended," and that Mr. Fassett's unscrewing of the fuel cap caused the "heated and pressurized" gasoline "to be spewed from the" tank.[15]

To prepare his report, Mr. Berry conducted testing on a Sears Craftsman ZT7000 mower—the same model used by Mr. Fassett on the day of his injuries.[16] The testing revealed that, "if the gas cap [on that mower] does not allow venting," the gasoline in the tank "can achieve temperatures of more than 120 degrees [Fahrenheit] and pressures of more than 7 psi," which "conditions are sufficient to cause a geyser or eruption of gasoline from the tank when the gas cap is loosened."[17] Mr. Berry, however, did not attempt to replicate *actual* geysering on the test mower;[18] as a result, Briggs argues that Mr. Berry's testimony should be excluded as "unreliable" and for "fail[ure] to fit the facts of this case."[19]

Under Federal Rule of Evidence, this Court has a "basic gatekeeping obligation" to ensure that expert testimony is both relevant and reliable.[20] Relevancy is measured by the testimony's ability to "assist the trier of fact."[21] Reliability, in turn, depends on whether the testimony is "based on the methods

---

[15] *Id.*

[16] *Id.*

[17] *Id..*

[18] Deposition of Thomas Berry (ECF No. 141-17) at 116 ("I won't do that test.")

[19] Brigg's Brief in Support of Its Motion to Exclude (ECF No. 144) at 7, 10.

[20] *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999).

[21] *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003).

and procedures of science rather than on subjective belief or unsupported speculation."[22] Both of these requirements are viewed in light of the "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact."[23]

Briggs points to no authority showing that an expert must attempt to replicate a dangerous, potentially life-threatening phenomenon in order to testify about the possibility of its occurrence—nor has this Court found any.[24] Therefore, Mr. Berry's testimony will not be excluded on this ground. Since Briggs does not take issue with any other aspect of Mr. Berry's procedures, conclusions, or opinions, its motion to exclude his testimony will be denied.

### B. Briggs's Motion for Summary Judgment

In its Motion for Summary Judgment, Briggs argues that judgment should be granted in its favor (1) because the Fassetts spoliated evidence after the incident occurred; (2) because there is some evidence that the Fassetts may have modified the mower before the date of the accident, which modification constituted a superseding cause of Mr. Fassett's injuries; and (3) because there is insufficient

---

[22] *Id.*

[23] *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995).

[24] *But see* July 19, 2017 Expert Report of Noah Ryder (ECF No. 141-14) at 11 (attempting—but failing—to replicate a gasoline geysering from the mower).

evidence to support the Fassetts claims for strict products liability, negligence, or breach of warranty.

### Whether the Fassetts Spoliated Evidence

Briggs argues that the Fassetts spoliated important evidence—namely, the mower—and that, as a result, summary judgment should be granted in its favor.

After the accident occurred, the Fassetts stored the lawnmower for some time before sending it to be examined and analyzed by an engineering firm retained by their insurer.[25] After that inspection was complete, the insurer offered to return the mower, but Mrs. Fassett decided that she "didn't need the memory" and declined to take it back.[26] As a consequence, the mower was apparently destroyed. Needless to say, none of the experts retained by the parties have had the opportunity to examine the mower in person, and have had to rely on photographs of it taken by the insurer's engineers.

In order to find that the Fassetts spoliated the subject evidence, this Court must first find that "there has been actual suppression or withholding of evidence"—*i.e.*, that the Fassetts "acted in bad faith" when they chose to dispose of the mower.[27] The evidence supports no such finding. Mrs. Fassett declined

---

[25] Deposition of Leslie Fassett (ECF No. 141-11) at 31.

[26] *Id.* at 30-32.

[27] *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73, 77 (3d Cir. 2012).

return of the mower in September 2013,[28] more than a year and a half before this lawsuit was filed, and there is no indication that she was preparing for, or even contemplating, legal action against anyone at that time. Therefore, this Court will not conclude that she deliberately "suppress[ed] or with[e]ld[]" anything from anyone, and will deny Briggs's motion for summary judgment on spoliation grounds.

### Whether Modifications to the Mower Constituted the Superseding Cause of Mr. Fassett's Injury

Briggs argues that Mr. Fassett's mower was modified prior to the accident, and that such modifications were responsible for the overheating of the mower's fuel tank—*i.e.*, that such modifications were the superseding cause of Mr. Fassett's injury, relieving Briggs of its liability.

In photographs taken by the insurer's engineer, it appears that certain components of the Fassett's mower are missing.[29] These components—identified as a "shroud" and a "heat shield"—were, according to Briggs, intended to prevent the transfer of heat from the engine and the exhaust system. Their removal, Briggs's argument goes, was unforeseeable, and resulted in an increased transfer of heat to the Fassett's fuel tank, which was the actual cause of the accident and Mr.

---

[28] State Farm Records (ECF No. 158-7) at Page 5-6.
[29] Expert Report of Harri Kytomaa (ECF No. 141-7) at 25-32.

Fassett's injury. The Fassetts deny making any such modification to their mower.[30]

There are a number of ways a reasonable jury can interpret this evidence. It could find that the components were missing when the Fassetts purchased the mower. It could find that the components were present at the time of purchase but removed by the Fassetts or someone else (the insurer's engineer, perhaps). Or, most importantly to this Court, it could find that the accident would have occurred *even if* those components were in place.[31] In any event, the "determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury,"[32] and it will remain so here. Therefore, this Court will deny Briggs's motion for summary judgment on superseding cause grounds.

### Whether the Fassetts Have Produced Sufficient Evidence to Support their Strict Products Liability Claim

Briggs argues that the Fassetts have not produced evidence from which a jury could find in their favor on their strict products liability claims. However, in his May 1, 2017 report, Mr. Berry concludes that the mower was defectively designed,[33] defectively manufactured,[34] and accompanied by insufficient

---

[30] Plaintiffs' Second Supplemental Responses to KCD's Interrogatory No. 22 (ECF No. 141-8).

[31] *See* May 1, 2017 Expert Report of Thomas Berry at 3 (finding, after testing an *unmodified* mower, that "conditions are sufficient to cause a geyser or eruption of gasoline from the tank").

[32] *Powell v. Drumheller*, 539 Pa. 484, 495 (1995).

[33] *Id.* (finding that the mower was "defective in design").

warnings.[35] Because a reasonable jury could credit Mr. Berry's opinion—and therefore hold that the mower was defective[36]—summary judgment on this ground will be denied.

### Whether the Fassetts Have Produced Sufficient Evidence to Support Their Negligence Claim

Briggs argues that the Fassetts have not produced evidence from which a jury could find in their favor on their negligence claim. Specifically, Briggs argues that there is no evidence that the mower was defective when it left Briggs's hands, or that Briggs failed to exercise due care. Once again, Mr. Berry's May 1, 2017 report provides the necessary support to the Fassetts. Not only does that report opine that the mower was defective, *see supra*, but it also indicates Mr. Berry's belief that the mower was "negligently designed."[37] Again, a reasonable jury could

---

A design defect claim may be based on a "consumer expectations" theory or a "risk-utility" theory. *Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 286 (2014). Mr. Berry's opinion supports a finding of liability on either theory. *See* May 1, 2017 Expert Report of Thomas Berry at 10 ("The design of the gasoline tank and fuel cap failed to meet a risk/utility/benefit test . . . ."); *id.* at 11 ("Owners, operators[,] and users of the . . . mower . . . would not expect the machine to be as dangerous as it was."). Therefore, this Court need not—and therefore does not— determine whether the Fassetts may proceed under both theories or only one of them.

[34] *Id.* (finding that the "failure of the fuel cap to provide adequate venting" was "due to . . . manufacturing defect").

[35] *Id.* (finding that defendants "failed to provide adequate warnings and instructions to the buyers and operators of the mower").

[36] *Dorshimer v. Zonar Systems, Inc.*, 145 F. Supp. 3d 339, 351 (M.D. Pa. 2015) ("Three types of defective conditions that can give rise to a products liability claim are design defect, defect in manufacturing[,] and defect due to inadequate or lack of warnings.").

[37] May 1, 2017 Expert Report of Thomas Berry at 10.

credit this opinion and hold that Briggs breached its duty to the Fassetts. Summary judgment on this claim will therefore be denied.

<u>Whether the Fassetts Can Sustain Their Breach of Warranty Claim</u>

Briggs argues that the Fassetts cannot sustain their breach of warranty claim because they have not identified any express warranty breached by Briggs, and because there is no evidence that Briggs breached the implied warranty of merchantability—*i.e.*, no evidence that the mower was defective.

Because the Fassetts have not identified any express warranty allegedly breached by Briggs, summary judgment will be granted on their breach of warranty claim to the extent that claim is based on breach of an express warranty. However, as discussed *supra*, there is sufficient evidence to show that the mower was defective. Therefore, summary judgment will be denied on the Fassetts' breach of warranty claim to the extent that claim is based on breach of the implied warranty of merchantability.

**C. KCD's Motion for Summary Judgment**

The Fassetts do not oppose KCD's Motion for Summary Judgment.[38] Therefore, it will be granted.

---

[38] ECF No. 155.

### D. Bemis's Motion for Summary Judgment

Bemis—the company that manufactured the fuel cap that Briggs integrated into the Fassetts' mower—moves for summary judgment on the third-party complaint filed by Briggs against Bemis for indemnification and contribution. In support of its motion, Bemis argues that there is no evidence showing that the cap was defectively designed or manufactured, or that it lacked adequate warnings.

In his May 1, 2017 report, Mr. Berry indicated that "the most likely cause of the eruption of gasoline from the [fuel tank] was a failure of the gas cap to vent as intended,"[39] and that this could have occurred either because of a design defect[40] or because of a manufacturing defect.[41] Mr. Berry also opined that "[t]he manufacturer . . . failed to provide adequate warnings . . . with respect to . . . the need for the gas cap to vent, how to clean or test the gas cap to assess if it was venting, [and] the need to replace the gas cap."[42] From this evidence, a jury could find that Bemis's cap was either partially or completely responsible for the injury that befell Mr. Fassett. Therefore, Bemis's motion will be denied.

---

[39] May 1, 2017 Expert Report of Thomas Berry at 3.

[40] *Id.* at 10 ("The defects in the design of the gasoline tank, fuel system[, and] fuel cap were present in the components when they left the" Defendants' control.").

[41] *Id.* ("The hazard in this instance is . . . due to the failure of the fuel cap to provide adequate venting . . . due to . . . manufacturing defect.").

[42] *Id.*

### E. The Fassetts' Motion to Supplement the Record

The Fassetts moved to supplement the record with certain expert testing results. Because this Court did not rely on those results when resolving the pending motions, it will deny the Fassetts' motion as moot.

## III. CONCLUSION

For the reasons discussed above, this Court will grant KCD's Motion for Summary Judgment but deny Bemis's Motion for Summary Judgment and Briggs's Motion to Exclude. Briggs's Motion for Summary Judgment will be granted in part and denied in part. And the Fassetts' motion to supplement the record will be denied as moot. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge